STATE OF VERMONT

ENVIRONMENTAL COURT

In re: Appeal of Paul and    }
Eileen Growald             }
                         }   Docket No. 236-10-00 Vtec
                         }
                         }

### Decision and Order on Appellee's Motion to Dismiss and on Cross-Motions for Summary Judgment

Appellants Paul and Eileen Growald appealed from a decision of the Zoning Board of Adjustment (ZBA) of the Town of Shelburne granting conditional use approval to Appellee-Applicant Shelburne Museum, Inc. Appellants are represented by James E. Knapp, Esq. and Craig Weatherly, Esq.; Appellee-Applicant is represented by R. Jeffrey Behm, Esq. and Eric E. Hudson, Esq.; the Town is represented by Amanda S.E. Lafferty, Esq. Appellee-Applicant has moved to dismiss the appeal for lack of Appellants' standing; both Appellants and Appellee-Applicant have moved for summary judgment. The Town has taken no position on the pending motions.

The following facts are undisputed unless otherwise noted.

Appellee-Applicant owns property known as the Brick House property on a fourteen- acre lot located at 387 Quaker Smith Point Road in the Town's R1 (Rural) zoning district. The Brick House property is adjacent to Shelburne Farms, a Planned Unit Development approved as an Historic Mixed Use PUD under the zoning bylaws in effect at the time; adjacent to Appellants' residential property to the north; and adjacent to another single-family residential property to the south.

The Brick House was in existence as of the War of 1812. The Brick House, then in poor repair, together with substantial acreage, was given as a wedding present in 1910 to James Watson Webb and his wife, Electra Havemeyer Webb, by Mr. Webb's parents. The Webbs renovated the house and built additions in 1913 and 1920, including a servants' wing to house 13 servants.

The Webbs lived in the Brick House for at least part of each year between 1913 and 1947, when Mrs. Webb founded the Shelburne Museum. As of and after 1947, the Webbs resided for a greater part of each year at the Brick House. A two-bedroom apartment was added to the rear of the Brick House in the late 1940s, initially to house one of the Webbs' sons upon his return from World War II. Prior to 1947, Mrs. Webb stored and displayed her substantial collection of American folk art at the Brick House; after the founding of the Museum, much of that collection was transferred to the museum buildings. Mrs. Webb resided at the Brick House until her death in 1960, after which her son, J. Watson Webb, Jr., lived at the Brick House for about five months of each year until his death in 2000. From 1947 to Mrs. Webb's death in 1960, Mrs. Webb from time to time hosted museum trustees, donors, visiting collectors and scholars in the house,

maintained a staff of servants in the 13 rooms of the servants' wing and possibly also in the apartment, and hosted large gatherings of guests, including for weddings and other events. All of these uses were entitled to be continued as pre-existing uses even if they became nonconforming when zoning was adopted in 1963, or when later zoning amendments were adopted.

As of the adoption of zoning in Shelburne in 1963, the Brick House had reached its present configuration as a 47-room (20 bedroom[1]) large historic house with 20,000 square feet of living space and a separate but attached two-bedroom apartment. The apartment has been used for a caretaker or property manager from at least 1975 to the present.

From 1960 to J. Watson Webb, Jr.' s death in 2000, when Mr. Webb was in residence he may have from time to time hosted museum trustees, donors, visiting collectors and scholars in the house, maintained a staff of servants in the servants' wing and possibly also in the apartment, and hosted guests in the house. These uses may be entitled to be continued as pre-existing uses even if they became nonconforming when later zoning amendments were adopted.

The Brick House property was conveyed in 1986 to Appellee-Applicant by the sons of Electra Havemeyer Webb, with one son, J. Watson Webb, Jr., retaining the right to use the Brick House property during his lifetime. At the time of conveyance to the Museum in 1986, the Brick House property included a large barn and several hundred[2] additional acres, all later conveyed to Shelburne Farms. From 1986 to the date of the present application, Appellee-Applicant from time to time hosted museum trustees, donors, visiting collectors and scholars in the house, maintained at least a caretaker in the apartment, and hosted events in the house, including New Year' s parties and private weddings. These uses similarly may be entitled to be continued as pre-existing uses even if they became nonconforming when later zoning amendments were adopted.[3]

After the death of J. Watson Webb, Jr., in 2000, Appellee-Applicant purchased the historically valuable contents of the Brick House from Mr. Webb' s estate. Intending to preserve and use the Brick House more fully in the course of its museum activities, Appellee-Applicant applied in approximately July of 2000 for conditional use approval for the following[4] uses: short-term housing for visiting scholars and interns; tours of the Brick House; prospective donor and trustee entertainment and accommodation; corporate meetings or private events such as weddings; and possible weekly rental of the two-bedroom apartment.

No physical changes are proposed to the property.

The ZBA approved the conditional use application with conditions, concluding that the proposed uses are similar under § 320.14 to permitted and conditional uses in the R1 district and otherwise consistent with the regulations. Particularly, the ZBA determined that the proposed uses are similar to a § 310.10 bed and breakfast with no more than four rooms for rent. On summary judgment, Appellants argue that the proposed uses do not qualify as allowed uses in this zoning district.

Appellants' statement of questions sets forth two questions. The first is whether conditional use can properly be granted to what Appellants characterize as conversion of ' a single-family residence' to ' a commercial enterprise.' Question 2 is whether separate site plan review is

required for this project. Question 2 is hereby DISMISSED as MOOT as Appellee-Applicant has since applied for and received site plan approval for the project.

Appellee-Applicant seeks dismissal of the appeal on the ground that Appellants lack standing as interested persons. Essentially, Appellee-Applicant claims that Appellants, though residents of property adjoining the Brick House property, are not in the " immediate neighborhood" contemplated by 24 V.S.A. § 4464(b)(3), due to the distance between the residences and the inability to see one residence from the other.

To interpret " immediate neighborhood," the Court examines not only at the proximity of the appellant to the project on appeal, but also whether the appellant potentially could be affected by any of the aspects of the project which the zoning laws regulate. In re Appeal of Brodhead, Docket No. E95-057 (Vt. Envtl. Ct., August 3, 1995); In re Appeal of Daniels, Docket No. 58-4-99 Vtec (Vt. Envtl. Ct., Sept. 12, 2000); In re Appeal of Gulli, Docket No. 135-6-00 Vtec (Vt. Envtl. Ct., March 22, 2001); In re Appeal of Stanak and Mulvaney, Docket No. 101-7-01 Vtec (Vt. Envtl. Ct., October 15, 2001). An adjacent property owner can potentially be affected by the noise, traffic, and use of an applicant' s property, sufficiently to qualify for standing, regardless of whether the evidence in the case bears out those concerns. In particular, in a case such as this one under § 320.14, a finding that the proposed use will not be detrimental to adjoining land uses is a threshold determination that must be made before the application can be considered for conditional use approval. Accordingly, Appellee-Applicant' s motion to dismiss is DENIED; Appellants have standing under 24 V.S.A. § 4464(b)(3) to bring this appeal.

The parties seek summary judgment on whether the proposed uses are allowed to be considered for conditional use approval as uses similar to permitted or conditional uses under § 320.14. This requires a finding that the use is " of the same general character" as the listed permitted or conditional uses for the district, together with a finding that the use " will not be detrimental" to the adjoining land uses or the other uses in the district. Like the merits of the conditional use application, the question of whether any of the proposed uses will be detrimental is disputed question of fact that must be reserved to the hearing on the merits. On the other hand, the determination of whether the proposed uses are of the same general character as the listed permitted or conditional uses is suitable for determination on summary judgment. We take each proposed use in turn, including the conditions Appellee-Applicant appears to propose to accept in connection with each proposed use.

Short-term housing for visiting scholars and interns

The relevance of the proposed use as being for visiting " scholars" is not the level of their scholarship, but their connection to the function and purpose of the owner of the house, that is, the Museum. The use of the house, including the servants' wing, for short-term housing for a limited number of visiting scholars and museum interns is of the same general character as the single-family use of a very large historic house for its invited guests, plus its use as a four-bedroom bed and breakfast, so long as a member of the museum staff resides on the premises at any time that any visiting scholars or interns are in residence. It is also of the same general character as a ' private guest house' (§ 1810.33), an accessory use to a single-family dwelling under § 310.6, although the former servants' wing is not a detached structure. Any limitations on

the numbers of visiting guest scholars, museum interns, or museum staff, or on the numbers and types of meals served to them during their accommodation, should be clarified in the application before this Court as well as being specified as a condition if conditional use approval for that use were to be granted.

Prospective donor and trustee entertainment and accommodation

Similarly, the use of the house for meetings, events and accommodation for a limited number of museum trustees, or prospective trustees or donors, is of the same general character as the single-family use of a very large historic house for its invited guests, plus its use as a four-bedroom bed and breakfast, so long as a member of the museum staff resides on the premises at any time that any visiting trustees or donors are in residence. It is also of the same general character as a 'private guest house' (§ 1810.33), an accessory use to a single-family dwelling under § 310.6, although the bedrooms proposed to be so used are not in a detached structure. Any limitations on the numbers of visiting guest trustees or donors, or on the numbers and types of meals served to them during their accommodation, or on the nature of the events to take place for them on premises, should be clarified in the application before this Court as well as being specified as a condition if conditional use approval for that use were to be granted.

Tours of the Brick House

The proposed tours to occur only during July and August, one time per day on weekdays and twice per day on weekends, by a group of up to 15 visitors brought to the property in a single vehicle are of the same general character as an accessory use to the single-family use of a very large historic house, which may open the house to a garden tour or a house tour on such a basis. Any limitations on the frequency, time of day, time of year, number of visitors per tour, number of museum employees on premises to handle the tour, or on any refreshments served to them during the tours, should be clarified in the application before this Court as well as being specified as a condition if conditional use approval for that use were to be granted.

Weekly rental of the two-bedroom apartment

The rental of the caretaker's apartment[5] qualifies as a conditional use, under § 320.3, as it is a second but attached dwelling in a structure built before 1981. It is also of the same general character as an accessory apartment under § 320.13, so long as a member of the museum staff resides on the main house premises at any time that the two-bedroom apartment is in rental use. Any limitations on the numbers or tenure of the tenants of this apartment should be clarified in the application before this Court as well as being specified as a condition if conditional use approval for that use were to be granted.

Unlimited rental of the property for corporate meetings or private events such as weddings for fewer than 150 people, plus up to 12 events annually for greater than 150 people

Unlike the other proposed uses, the unlimited rental of the property to persons or entities unrelated to the Museum owner, for corporate meetings or private events such as weddings for fewer than 150 people, together with its rental for up to twelve events annually for greater than

150 people, is a use on a scale larger than the general character of any of the permitted or conditional uses. It is true that the single-family use of a very large historic house for its invited guests could involve corporate or non-profit board meetings in which the owner has an interest, as well as large weddings and other social events. But Appellee-Applicant has not proposed a reasonable number of such events shown to be consistent with its use as a large historic single-family house. Nor has Appellee-Applicant shown that the rental of the house to unrelated entities is of the same general character as would be its use for corporate meetings and social events related to the owner. Material facts are in dispute as to whether the volume of meetings and social events proposed, and the rental nature of those events, are of the ' same general character' as such uses by the residents of a very large historic single-family house.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that both motions for summary judgment are GRANTED in PART and DENIED in PART. Appellee-Applicant's proposed uses of the Brick House for 1) short-term housing for visiting scholars and interns; 2) tours during July and August, one time per day on weekdays and twice per day on weekends, by a group of up to 15 visitors brought to the property in a single vehicle; 3) accommodation and entertainment of Museum trustees and prospective donors; and 4) rental of the two-bedroom apartment; are all of the same general character as permitted or conditional uses in the district, under § 320.14(1), and may proceed in the present appeal to a hearing on the merits of whether such uses will be detrimental under § 320.14(2) and whether they otherwise meet the conditional use standards of § 1610.

Summary judgment is denied as to whether Appellee-Applicant's proposed use of the Brick House for unlimited rental of the property for corporate meetings or private events such as weddings for fewer than 150 people, plus rental for up to twelve larger such events annually for greater than 150 people, is of the same general character as any of the permitted or conditional uses in the district, under § 320.14(1). This ruling is without prejudice[6] to whether some more restricted proposal to use the Brick House for such events could potentially qualify under § 320.14(1).

Summary judgment is denied on of whether any of the proposed uses will be detrimental under § 320.14(2), as material facts are in dispute. We will hold a telephone conference on Friday, November 16, 2001, at 4:30 p.m. to schedule the hearing on the merits of this application and to determine whether Appellee-Applicant will be filing any additional applications with the ZBA.

Done at Barre, Vermont, this 13th day of November, 2001.

_____
Merideth Wright
Environmental Judge

**Footnotes**

1. Appellants appear to dispute whether these 20 bedrooms include or are additional to the 13 bedrooms in the servants' wing.

2. The number of additional acres, and their frontage, would determine whether the property ever could have qualified as a conforming Rural Mixed Use PUD, depending upon when §1640.2(D) took effect and when the remaining acreage and buildings were conveyed.

3. We note that Appellee-Applicant has not requested approval of any of the proposed uses of the Brick House property under §1620.1(1), either as a continuation of a preexisting nonconforming large historic house use; or as a continuation of a preexisting Rural Mixed Use PUD, nonconforming as to acreage and frontage. Any such approval would have to be submitted to the ZBA in the first instance, before it could be considered by this Court. In any event, in the present motions the parties have not supplied the successive zoning regulations, nor have the parties supplied sufficient facts regarding the uses made of the property between Mrs. Webb's death in 1960, its transfer to the Museum in 1986, and Mr. Webb's death in 2000, from which the Court could determine whether any of the proposed uses qualified as pre-existing nonconforming uses during that period.

4. Several other uses of the property appear to be contemplated by Appellee-Applicant, but were not explicitly laid out in the application. The application does not request approval for museum staff to live at the Brick House on either a short-term or a long-term basis; however, the ZBA decision finds that "museum staff and interns" will occupy the former servants' wing. The application also does not mention conducting museum-related seminars in art history at the Brick House, but that use is referred to in the October 12, 2000 Planning Commission minutes, page 5.

5. The materials mention that this rental might be in conjunction with the use of the adjacent Shelburne Farms property. They also refer to Shelburne Farms as a Rural Mixed Use PUD. Any application for this use or any of these uses as part of the Shelburne Farms PUD would have to be the subject of a different application before the ZBA.

6. It is also, as noted above, without prejudice to consideration of such events as a continuation of a preexisting nonconforming use under §1620.1 or to application for such events as changes to a preexisting nonconforming use under §1620.1(1).